Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

_____ Division

| | |
|---|---|
| Joseph W. Meyer | )  Case No. _____ |
| _____ | )           *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | )  Jury Trial:  *(check one)*   ☒ Yes   ☐ No |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| -v- | ) |
| | ) |
| Walmart Stores, Inc. | )  RECEIVED |
| _____ | ) |
| *Defendant(s)* | )  DEC - 6 2019 |
| *(Write the full name of each defendant who is being sued.  If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | )  CLERK OF DISTRICT COURT |
| *write "see attached" in the space and attach an additional page* | )  SOUTHERN DISTRICT OF IOWA |
| *with the full list of names.)* | ) |

## COMPLAINT FOR A CIVIL CASE

**I.      The Parties to This Complaint**

    **A.      The Plaintiff(s)**

        Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Joe W. Meyer |
| Street Address | PO Box 442 |
| City and County | Ames                     Story |
| State and Zip Code | Iowa   50010 |
| Telephone Number | |
| E-mail Address | |

    **B.      The Defendant(s)**

        Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

  Name

  Job or Title *(if known)*

  Street Address

  City and County

  State and Zip Code

  Telephone Number

  E-mail Address *(if known)*

Defendant No. 2

  Name

  Job or Title *(if known)*

  Street Address

  City and County

  State and Zip Code

  Telephone Number

  E-mail Address *(if known)*

Defendant No. 3

  Name

  Job or Title *(if known)*

  Street Address

  City and County

  State and Zip Code

  Telephone Number

  E-mail Address *(if known)*

Defendant No. 4

  Name

  Job or Title *(if known)*

  Street Address

  City and County

  State and Zip Code

  Telephone Number

  E-mail Address *(if known)*

COMPLAINT FOR A CIVIL CASE

I. The Parties to This Complaint

    A. The Plaintiff

        Joseph W. Meyer

        PO Box 442   Ames, Iowa  50010

        Story County

    B. The Defendant

        Walmart Stores, Inc.

        Walmart # 4256

        702 S.W. 8th Street

        Bentonville, Arkansas

        72716

II. Basis for Jurisdiction

Pro Se 1 (Rev. 12 16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question                      ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual
        The plaintiff, *(name)* Joseph W Meyer , is a citizen of the State of *(name)* Iowa .

    b.    If the plaintiff is a corporation
        The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,
        and has its principal place of business in the State of *(name)* _____ .

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual
        The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

b.   If the defendant is a corporation

The defendant, *(name)* Walmart Stores, Inc , is incorporated under

the laws of the State of *(name)* Delaware , and has its

principal place of business in the State of *(name)* Arkansas .

Or is incorporated under the laws of *(foreign nation)* ,

and has its principal place of business in *(name)* .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.   The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

---

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

Title VII of the Civil Rights Act of 1964. Racial Discrimination.
42 USCA §1981 Ch. 21 Note 27. Intent or Motive - generally. Bullying
and harrassing over a 6-8 month period. Then being demoted for
reporting complaint.
18 USCA §113 Note 12. Simple Assault 6 Am Jur 2d §18.
Intent to frighten Being told to "Sit," then "What, are you going to pee
now".

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

$ 290,000          Actual Compensatory.

45A  Am Jur 2d  § 58  In general, acts by supervisors.
22 Am Jur 2d  § 216 Embarrassment or humiliation.
§327 Damages for emotional distress, mental anguish

VI. Cause of Action

Statutes.

1. For Kody Galles telling me "Sit." Then, "What are you going to pee now."
   - 18 USCA § 113 Note 12. Simple Assault, 6 Am Jur 2d § 18. Intent to Frighten or cause fear.

2. For 8 months of mistreatment followed by a demotion by a black supervisor.
   - Title VII of the Civil Rights Act of 1964
   42 USCA § 1981 Ch. 21 Note 27. Intent or motive generally
   45A Am Jur 2d § 58 In General; acts by supervisors -12,-13,-15

Printed Name  Joe W. Meyer        Date  10/24/2019
Signature     Joe W. Meyer

Incidences

1. Lying about failing to meet deadlines. Purposely giving poor evaluation scores of work performance to inhibit progress throughout the company.

   a. My immediate supervisor recently gave the annual evaluations for all the employees. I have reported him several times for mistreated me, yelling at me in front of customers and employees, threatening to write me up even though my labor deadlines have been within the allowed timeframes, etc.

   b. The rating that he gave me was "Needs improvement". With this rating, an employee is not able to be promoted, transfer to another department, or transfer to another facility.

   c. I strongly disagreed with this and immediately sought counsel from a manager. I told him about the low evaluation rating, and he replied, "Really, well if that is the case then I would talk to your immediate manager. I have seen improvement since your last evaluation of "Solid Performer".

   d. I then discussed this with my immediate manager, whom then agreed with me. He said, " You are a valued employee, if you weren't then we wouldn't be having this conversation, I am going to move you up to a "Solid Performer" rating."

2. Being written up for not meeting appropriate time frames even though I produced written evidence that the deadline was met.

    a.  I had a pallet of material to get on the shelf. My manager said, "Get that done before lunch, or I am writing you up." I had about thirty minutes until lunch. I told him that it was going to take about sixty minutes.

    b.  I replied, "Have you counted the items on the pallet." He said get it done or you are getting written up.

    c.  We are allowed about fifty-five seconds an item, from the time that we grab the item, to the time we find the location, to the time that we get all of the product on the shelf. I told the manager after I quickly counted the items that it was going to take another thirty minutes after lunch. He ignored me.

    d.  Later on I was written up. I physically counted and documented the items. I was well within the time frames. The manager discarded the paper and followed through with the write up. I said I disagree, as I am within the singular time frames, and the supervisor didn't give me an accurate or achievable realistic time frame.

3. Promoting part-time employees with less seniority than I to management positions.

4. Ignoring requests for transfers, promotions.

5. Telling me they cannot lose me, while in a labor position, while ignoring all requests.

6. Ignoring formal and informal statements or verbal complaints made against me from other employees, managers, supervisors.

7. Constant threats of write ups, or disciplinary actions, even though requirements are being met.

8. Constant yelling, being singled out due to me not being a part of their social groups.

9. Belongings disappearing.

10. Throwing items from my workspace and telling me to do it over.

11. Ignoring me while asking work related questions while on the clock. Then walking away.

12. Degrading me constantly.

Incidences

Statements made towards me. Both reported to management and unreported. Statements were made by employees, managers, and supervisors.

1. "You will never be a manager"

2. "He's like a dog. He goes up and then backs down."

3. "Sit. Are you ready to sit, go do your work."

4. "Sit, Stay."

5. "I'm glad we're not taking a break with him."

6. "What's he going to do about it."

7. "Are you ready to eat your banana."

8. "Sit. What are you going to pee now. Yeah that's what I said."

Incidences

On or around June 29, 2019, I was notified that employee Kody Galles had been promoted to the department manager of Homelines/Domestics. This is the same position that I had previously applied for, and also after the incident I had with Mr. Galles.

Actions Taken To Correct

1. I have reported around 3 verbal complaints of mistreatment.

2. I have reported and turned in 5 formal statements regarding mistreatment.

3. Even after these, management still hasn't made any efforts to discipline or correct the behavior and/or mistreatment of me.

Incidences


On or around May 1st, 2019, I applied for the position of department manager of Homelines/Domestics. I passed the management assessment and notified the assistant manager Tyler Frahm of my qualifications and that I had applied for the job. He said, "What job, I'll look into it." He never responded after that and he has avoided me since.

## Conclusion

This treatment has been occurring over the last two to three years of employment. I have done everything within my power to correct and stay positive during these circumstances.

1. The Plaintiff

   a. The Plaintiff ___Joe W. Meyer___, is a citizen of the State of ___Iowa___.

2. The defendant is a corporation

   The defendant, ___Walmart Stores, Inc.___, is incorporated under

   The laws of the State of ___Delaware___, and has its principal

   Place of business in the State of ___Arkansas___.

III. Statement of Claim

On or around 11/20/2018, I asked Lionel Martialayangma, a black male, support manager at the time, if he was still dating another associate, Andrea, a white female. He replied, "It's none of your business," in an angry tone, and walked away.

From then on, he would give me dirty looks, and also ignore me when I would say hello.

Then, on or around 3/1/2018, Lionel Martialayangma, a black male, was named supervisor of my department. The same position that I applied for.

Right from the beginning he began bullying me. He would give me more work than scheduled, then say, "Why aren't you done." He would then notify management that I wasn't meeting production times for my position. I told management that he is lying and that I am meeting my time frames. I started keeping track of my times on paper. When he would say I wasn't meeting my time frames, I would present what I had accounted for. He ignored me and kept telling management that I wasn't meeting my goals. I showed management my

timesheets and told them that they could check the surveillance cameras if they still didn't believe me. After checking the cameras, they stopped bothering me. I continued to keep track of my times.

Soon after, Lionel Martialayangma, a black male, approached me, grabbed my paper, and wadded it up as he walked away. I informed my manager, Kyle Doyle, a white male. He moved me to the other side of the store on a task of presorted and precalculated items and time frames. He also changed my schedule so I would only see Lionel Martialayangma three times a week.

Over the next couple months, Lionel Martialayangma, a black male supervisor, continued to bully and single me out. He would completely ignore me when I would ask him questions. He would throw things off my cart and tell me "Do it again". When it was time for lunch, he would say, "Go to lunch", in an angry condescending tone. While with other employees of the same ages, around 18-22 years old, he would say, "It is lunch time."

He would also threaten almost daily with, "Get this done in the next twenty minutes or I'm writing you up." Even though I was consistently hitting my time frames, and he knew that it was too much work to be done in twenty minutes. I avoided him as much as possible. I even started skipping my breaks and lunches to make up for the bullying.

I notified human resources, verbally, around three times, informally, of the bullying, harassment, and discrimination. They told me to ignore them. They also spoke with my supervisor.

Annually, we are given performance reviews by management. The score of "Solid Performer" allows an associate to be promoted, transferred, and not be disciplined. Lionel Martialayangma, a black male, the current supervisor, gave me a performance rating of "Needs Improvement". Which is intentional blocking with a bias opinion due to race. Under this rating, associates are not allowed to transfer, not allowed promotions, and may possibly have further negative disciplinary actions. At this point of my employment I have been meeting all production goals and have not missed any days of work. I immediately notified Kyle Doyle, a white male, the manager above, Lionel Martialayangma. Upon discussing the situation with Kyle Doyle, a white male manager, he changed my rating to "Solid Performer", a rating above "Needs Improvement", with no restrictions.  He said that my work is more than good, and he wouldn't be doing this is if it wasn't.

On or around May 15th , 2019. While doing work, associate Kody Galles walks by and yells "Sit" towards me. I looked at him and asked him what he said. He responds, "What, are you going to pee now." I responded again, "What did you just say." He looks to me and says, "Yeah, that's what I said." He then walked to the back room and started working with the supervisor Lionel Martialayangma.

I immediately approached the employee Kody Galles and the supervisor Lionel Martialayangma. I told him that I would need to report this to Human Resources. The employee Kody Galles looked towards the supervisor Lionel Martialayangma, and he started laughing.

I then contacted the shift manager and informed her of what happened. She told me that she would let the store manager Jon Lempiainen know of the situation first thing in the morning. I made a formal statement of the incident. The manager asked the supervisor Lionel Martialayangma if he was informed of what happened, he replied Yeah, while laughing, then continued to tell of what happened.

On or around May 16th, 2019. I approached the store manager Jon Lempiainen and gave him a copy of the formal statement of what happened. He says, "Kody Galles hasn't done anything wrong, he just told you to sit, then said he had to go pee. This doesn't go against anything in our policy and is not a violation." I immediately corrected him, and he still wouldn't acknowledge the severity of what happened. I told him that his employee Kody Galles telling me to sit, and then asking me if I was going to pee after is a severe, degrading, inhumane thing to say in the workplace. Being degraded to an animal. The first instinct I have is fight or flight, an immediate need for defending yourself due to the unsurety of the situation. Fear was clearly evident, and can also be argued that Kody Galles recognized this fear by saying " What are you going to pee now."

The manager Jon Lempiainen then raised his voice and said, "Don't talk over me." He then continued to tell me Kody Galles did nothing wrong and told me he would tell the employee Kody Galles not to do it again if it was bothering me this much.

I told him that this behavior is not professional and should not be tolerated. I left and told human resources that I still do not agree with managements decision to take no further actions. I also included in the

statement that the bullying has continued to get worse and I need to be transferred, have actions taken, or I will be seeking employment with someone else. They continued to ignore and refuse. I also mentioned that this behavior does not promote a safe work environment.

I returned to work. About an hour after, the store manager Jon Lempiainen approached me again. He gave me the harassment policy, and further told me that Kody Galles did nothing wrong. I told him that I disagree and let him know the specific items that he was violating. He continued to ignore and told me that he was just young. I still disagreed. We quietly ended the conversation and then parted ways.

As my days continued to get worse from constant yelling from, Lionel Martialayangma, a black male. I eventually went to store manager Jon Lempiainen, a white male, and told him I would like to make a formal written statement of the bullying and harassment from Lionel Martialayangma, a black male.

Still no disciplinary actions were taken, and I continued to be singled out. Over the next couple months, I wrote five to six more formal statements. Still, I received no response from the management and human resources.

The last formal complaint I made was against Lionel Martialayangma, a black male supervisor. He started yelling at me when I first got to work. I was doing prep work prior to the shift, yet he said I was just walking around. I told him again of what work I had been doing, and again, yelling, said, "You need to be working if you are clocked in." At this point we were both heated. I said, "What is your problem with me. Are you just bullying and harassing me." He replied, "Yeah". I then said, "Are you just singling me out." He replied, "Yeah". I immediately went to HR and reported the incident.

They said they would investigate the incident, and that I could take the rest of the day off.

When I returned to work nobody said anything to me. HR said nothing is going to be done, and that Lionel Martialayangma, is not going to be disciplined.

The following day, as nothing was being done, I filed a police report with the local Police Department of the assault and bullying. I asked the Police Department to get a copy of the surveillance tapes to strengthen my claim of the assault. Nothing was done.

Upon returning to work, I was called into the management office. Jon Lempiainen, a white male, the store manager, gave me a demotion. He said he was transferring me to a different department where I would not have to see Lionel Martialayangma or Kody Galles, and gave me the options of three lower paying jobs. He also said that if I continued to complain then I would be harassing them, the management team, including the supervisors.

In conclusion, I was yelled at daily by my immediate supervisor and management staff, intentionally bullied, harassed, and discriminated against, assaulted, and demoted due to my constant complaints. Nothing was done by human resources or management to correct the situation. I contacted the police department and still nothing was done. I have copies of most of the written complaints, surveillance tapes of the incidents, my own testimony, and witness statements or testimonies.

1. 18 USCA § 113 Note 12. Simple Assault, 6 Am Jur 2d § 18. Intent to Frighten

2. Title VII of the Civil Rights Act of 1964
42 USCA § 1981 Chapter 21
Note 27. Intent or motive - Generally
45A Am Jur 2d
§ 58 In general; acts by supervisors
-12, -13, -15

22 Am Jur 2d

§ 216 Embarrassment or humiliation

IV. Relief

$ 290,000 actual compensatory

1. 42 USCA § 1981 Ch. 21
   a. Note 1111.   Damages - generally
   b. Note 1116.   Compensatory damages - generally
   c. Note 1117.   Cap - compensatory damages
                        $ 300,000
   d. Note 1118.   Emotional or mental harm,
                        actual compensatory damages

2. 22 Am Jur 2d
   1. § 639 - Tort actions   2.   § 142 Generally
   3. § 640 - defamation actions
   4. § 108, § 220 - Mental Suffering 5. Loss of
      reputation.

42 United States Code - Chapter 21 – Civil Rights

Subchapter I – Generally

Section

1981.                     Equal rights under the law.

1981a.                    Damages in cases of intentional discrimination in employment.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

42 USCA § 1981 Chapter 21 Note 27. Intent or motive generally

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:       10/24/2019

Signature of Plaintiff       Joe W. Meyer       Joe W. Meyer

Printed Name of Plaintiff       Joe W. Meyer

### B.   For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

V. Certificate and Closing

A.   Date of signing ___10 / 24 / 2019_____

Signature of Plaintiff ___Joe W. Meyer_____

Printed name of Plaintiff ___Joe W. Meyer_____



**PRIORITY MAIL**

DATE OF DELIVERY SPECIFIED*

USPS TRACKING™ INCLUDED*

INSURANCE INCLUDED*

PICKUP AVAILABLE

* Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

**PRIORITY MAIL**

FROM: JMeyer
PO Box 442
Ames, IA
50010

FROM:

TO: Clerk of Court
123 E. Walnut St. Rm 300
Des Moines, IA
50309

US POSTAGE PAID
$7.85
Origin: 50014
12/05/19
1802700611-05

PRIORITY MAIL 1-DAY

1 Lb 8.80 Oz
1006

EXPECTED DELIVERY DAY: 12/06/19

C082

SHIP
TO:
123 E WALNUT ST
STE 300
DES MOINES IA  50309-2040

USPS TRACKING® NUMBER

9505 5114 3322 9339 2103 57

Label 228, March 2016          FOR DOMESTIC AND INTERNATIONAL USE

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES
POSTAL SERVICE